**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Juan Cotto Arvelo**<br>**Rosa Negron Lopez**<br>Debtor(s) | CASE NO.    13-03879 MCF<br><br>CHAPTER    13 |
| Banco Santander   PR as   Servicing<br>Agent for AEELA<br><br>               Movant | 11 USC 362 d(1) d(2) |
| Juan Cotto Arvelo<br>Rosa Negron Lopez | Relief from stay for cause |
| and Chapter 13 Trustee,<br>Alejandro Oliveras Rivera<br><br>       Respondent(s) | |

## MOTION FOR RELIEF FROM STAY

TO THE HONORABLE COURT:

Comes now, Banco Santander PR,as Servicing Agent for AEELA secured creditor, represented by the undersigned attorney who respectfully prays and states as follows:

1.      Jurisdiction over subject matter is predicated on section, 1334 and 157(b) 2(G), 28 USC.

2.      The cause of action is based on section 362 d(1) and d(2), 11 USC.

3.      In this case, an Order for Relief was entered on May 13  2013.

4.      Movant is the holder in due course of a Mortgage Note, hereinafter the (Note), for $174,000.00, bearing interest of 4.50 %, due on March 1st. 2052.

5.      Since the filing date, debtor account has accumulated **Post Petition** arrears as described in Exhibit (A) of this motion, Verified Statement in compliance with LBR 4001-1(d)(3) **and any other arrears that continue to accrue up to the date all post petitions**

**Juan Cotto Arvelo**
13-03879 MCF

**arrears are paid.**

6.    Movant argues that considering what is herein above stated, cause exists for

granting relief from the stay pursuant to section 362 d(1) d(2), *supra*, since debtor has

failed to make post petition payments accordingly.

7.  Said default deprives Movant to have its security interest protected as provided

under the Bankruptcy Code.

Included as Exhibit (B), is Movant's Verified Statement regarding the information

required by the Service Member Civil Relief Act of 2003 and the Department of Defense

Manpower Data Center Military Status Report.

WHEREFORE, Movant prays for an Order granting the Relief from Stay as

requested.

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

I hereby certify that on this date copy of this motion has been electronically filed with

the Clerk of the Court using the CM/ECF system which will send notification of such filing to

debtor(s) attorney and to Alejandro Oliveras Rivera, Chapter 13 Trustee, and also certify

that I have mailed by United State Postal Service copy of this motion to the following non

CM/ECF participants: to debtor(s) at theirs address of record in this case.

In Caguas, Puerto Rico, on the 7 day of Octuber, 2014.

**RAMOS & BAGUE**
Attorney for Banco Santander PR
PO  BOX  306
Caguas, PR  00726-0306
Tels.: (787) 502-8037, Fax No. (787) 653-6003
E-mail: ramosbague@gmail.com

/s/ Jessenia Ramos Talavera, Esq.
Jessenia Ramos Talavera, USDC PR 223607





October 7, 2014

Banco Santander
Box 362589
San Juan, PR 00936

-----------------------------------------------------------------------------

### STATEMENT OF ACCOUNT

Name:    **JUAN COTTO ALVELO**          Filing Date:    **5/13/2013**

**ROSA NEGRON LOPEZ**          Bankruptcy case:    **13-03879**

Loan:    ▆▆▆▆▆**7658**

Due on Post Petitions since **8/1/2014** until **10/1/2014**

| | | | | | | |
|---|---|---|---|---|---|---|
| Payments | 3 | X | $ | 685.75 | $ | 2,057.25 |
| Late Charge | 3 | X | $ | 19.22 | $ | 57.66 |
| Atty Fees | | | | | $ | 426.00 |

**Total**          **$ 2,540.91**

**Principal Balance**          **$175,388.64**

**Providencia Pérez De Jesús**
Oficial Quiebras Hipotecarias
Santander Puerto Rico
Tel. 787-522-7475

**Allonge**

(Para anejarse al pagaré a favor de **ASOCIACIÓN DE EMPLEADOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO (AEELA)**, o su orden, por la suma de **$174,000.00**, intereses al **4.50%** anual, suscrito por **JUAN COTTO ALVELO y ROSA NEGRON LOPEZ** ante el Notario Público Guillermo Mojica Maldonado, mediante afidávit número **3997** el **18 de noviembre de 2009**).

**NOTA:** Según se hace constar en la escritura número cuarenta y uno (41) sobre Modificación de Hipoteca, otorgada en esta misma fecha y ciudad ante el(a) Notario suscribiente, los términos y condiciones del Pagaré y la Hipoteca que lo garantiza han sido modificados de la siguiente manera: (a) A la fecha del presente otorgamiento, el balance del principal insoluto del PRESTAMO HIPOTECARIO, más cualquier partida que pudiera existir por concepto de plazos mensuales vencidos de principal e intereses, seguro contra riesgo de fuego, huracán y terremoto, seguro contra riesgo de inundaciones y para el pago de las contribuciones sobre la propiedad totalizan **CIENTO SETENTA Y NUEVE MIL OCHO DOLARES CON VEINTE CENTAVOS ($179,008.20)**. De otra parte se aclara que, de existir alguna partida en concepto de cargos por atrasos en el pago de los plazos mensuales de principal e intereses, dicha partida no ha sido considerada para determinar la suma del nuevo principal del PAGARE y la HIPOTECA, es decir, que no ha sido capitalizada; pero, que de ser aplicable al caso de LOS DEUDORES HIPOTECARIOS, éste continuará adeudándole dicha partida de cargos por atrasos a EL ACREEDOR HIPOTECARIO de conformidad con los términos y condiciones del PAGARE y la HIPOTECA. Se aclara además, que por vía de excepción, EL ACREEDOR HIPOTECARIO no podrá acelerar la fecha de vencimiento del PAGARE y la HIPOTECA por el mero hecho de que dichos cargos por atrasos permanezcan impagados luego de otorgada la presente escritura; y, que dicha excepción aplicará únicamente a los cargos por atraso en el pago de plazos de principal e intereses adeudados con anterioridad a la fecha del presente otorgamiento. Sin embargo, dichos cargos por atraso deberán ser satisfechos por LOS DEUDORES HIPOTECARIOS, en o antes de la fecha de vencimiento o el saldo del PAGARE y la HIPOTECA, lo que

ocurra primero; (b)   La reestructuración del   PRESTAMO HIPOTECARIO contempla una reducción en la suma de los plazos mensuales y consecutivos de principal e interés, así como de la tasa de interés anual, por espacio de **TREINTA Y SEIS (36) MESES, ("PERIODO DE REDUCCION")**, el cual periodo comenzará el **PRIMERO DE ABRIL DE DOS MIL DOCE (2012)**, y terminará el **PRIMERO DE MARZO DE DOS MIL QUINCE (2015)**; (c)  La tasa de interés anual vigente durante el PERIODO DE REDUCCION será **TRES POR CIENTO ANUAL (3%)**; (d) Durante el PERIODO DE REDUCCION, los plazos mensuales y consecutivos de principal e intereses serán de **SEISCIENTOS CUARENTA DOLARES CON OCHENTA Y TRES CENTAVOS ($640.83)**; (e) Comenzando el **PRIMERO DE ABRIL DE DOS MIL QUINCE (2015)**, el interés será reajustado a la tasa original del PRESTAMO HIPOTECARIO **("FECHA DE REAJUSTE")**, o sea, a **CUATRO PUNTO CINCUENTA POR CIENTO (4.50%)**, y de ahí en adelante el principal e interés serán pagaderos en la Asociación de Empleados de Gobierno de Puerto Rico, o en cualquier otro lugar que el tenedor del PAGARE indique por escrito en **CUATROCIENTOS CUARENTA Y CUATRO (444)** pagos mensuales iguales y consecutivos de **SETECIENTOS NOVENTA Y CUATRO DOLARES CON OCHENTA Y SEIS CENTAVOS ($794.86)** en el PRIMER día de cada mes hasta que se pague totalmente la deuda insoluta del PRESTAMO HIPOTECARIO, excepto que la deuda restante, si no antes pagada, quedará vencida y pagadera en la fecha de vencimiento del PAGARE y la HIPOTECA, o sea, el PRIMERO DE MARZO DE DOS MIL CINCUENTA Y DOS (2052). A solicitud de EL ACREEDOR HIPOTECARIO, LOS DEUDORES HIPOTECARIOS se obligan a otorgar, en o antes de la FECHA DE REAJUSTE del PRESTAMO HIPOTECARIO, las enmiendas necesarias al PAGARE y a la HIPOTECA que lo garantiza para reflejar la nueva tasa de interés y el balance del principal a dicha fecha; (f) EL ACREEDOR HIPOTECARIO podrá realizar evaluaciones anuales para determinar si la situación de LOS DEUDORES HIPOTECARIOS permanece bajo los parámetros de elegibilidad para la presente reestructuración; y, de determinar que la situación económica de LOS

DEUDORES HIPOTECARIOS ha mejorado al punto en que ya no cumple con los referidos criterios de elegibilidad, EL ACREEDOR HIPOTECARIO podrá acortar el PERIODO DE REDUCCION y adelantar la fecha de reajuste e igualmente modificar de conformidad los demás términos que se mencionan en el inciso (e) anterior, con excepción de la tasa de interés que continuará siendo la tasa original del PRESTAMO HIPOTECARIO. A tales efectos, EL ACREEDOR HIPOTECARIO le notificará de dicha determinación a LOS DEUDORES HIPOTECARIOS por escrito; y, la FECHA DE REAJUSTE no podrá ser más cercana de treinta (30) días de la fecha en que EL ACREEDOR HIPOTECARIO le envíe a LOS DEUDORES HIPOTECARIOS dicha notificación por correo, o le sea entregada por cualquier otro medio; (g) EL ACREEDOR HIPOTECARIO consiente a la presente reestructuración del PRESTAMO HIPOTECARIO en atención a la situación económica particular de LOS DEUDORES HIPOTECARIOS. Por tal razón, en el caso de cualquier tercero, que no sea un heredero universal con una participación en el caudal relicto de LOS DEUDORES HIPOTECARIOS, asuman las obligaciones del PAGARE y la HIPOTECA. EL ACREEDOR HIPOTECARIO tendrá la opción de rescindir retroactivamente todos los términos y condiciones de la presente reestructuración, como si esta no se hubiera realizado. Ello podría dar lugar a que surjan deudas adicionales por concepto de principal e intereses, más recargos, lo cual podría a su vez ocasionar que EL ACREEDOR HIPOTECARIO haga uso de los remedios que tiene bajo los términos y condiciones del PAGARE y la HIPOTECA, incluyendo la aceleración del PRESTAMO HIPOTECARIO; (h) LOS DEUDORES HIPOTECARIOS incurrirán en incumplimiento del presente acuerdo de reestructuración si no pagan la cantidad total de cada pago mensual a la fecha de su vencimiento. En tal caso, EL ACREEDOR HIPOTECARIO, sus cesionarios o sucesores en derecho podrán notificarle a LOS DEUDORES HIPOTECARIOS, de conformidad con la forma establecida en el PAGARE y la HIPOTECA, que si no pagan la cantidad vencida para cierta fecha, podrán rescindir el presente acuerdo de

reestructuración y requerirles el saldo inmediato de la suma total del principal no pagada, más todos los intereses, recargos y demás cantidades que les adeude LOS DEUDORES HIPOTECARIOS. ----------------------------------------------------------

Los demás términos y condiciones del PAGARE y de la HIPOTECA que lo garantiza, permanecen inalterados y permanecen en vigor.

En San Juan, Puerto Rico, a 19 de marzo de 2012.


_____
**JUAN COTTO ALVELO**

_____
**ROSA NEGRON LOPEZ**

AFFIDÁVIT NÚMERO: **4,618**

Reconocido y suscrito ante mí por **JUAN COTTO ALVELO** y **ROSA NEGRON LOPEZ**, ambos mayores de edad, casados entre sí, propietarios y vecinos de Cidra, Puerto Rico a quien por no conocer personalmente identifico mediante sus respectivas licencias de conducir número ~~_____~~ ~~_____~~, expedidas por el Estado Libre Asociado de Puerto Rico, con foto y firma y las cuales muestran voluntariamente.

En San Juan, Puerto Rico, hoy 19 de marzo de 2012.


_____
NOTARIO PÚBLICO

Elaine M. Velez Torres
Abogada Notaria

COPY OF ORIGINAL (NON NEGOTIABLE)

## NOTE
## PAGARÉ

| November 18, 2009 | San Juan, | Puerto Rico |
|---|---|---|
| DATE | CITY | STATE/U.S. TERRITORY |
| *Fecha* | *Ciudad* | *Estado/U S. Territorio* |

**D 15 ROBLE ST., HACIENDA LA CIMA
CIDRA, PUERTO RICO 00739**

PROPERTY ADDRESS
*Dirección de la Propiedad*

### 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay **ONE HUNDRED SEVENTY FOUR THOUSAND DOLLARS (U.S. $174,000.00)**, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **ASOCIACIÓN DE EMPLEADOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, (AEELA).** I will make all payments under this Note in cash, check or money order.

I understand that the Lender may transfer t his Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 1.   PROMESA DEL DEUDOR DE PAGAR

*A cambio de un préstamo que he recibido, prometo pagar CIENTO SETENTA Y CUATRO MIL DÓLARES (U.S. $174,000.00), (esta cantidad se llamará "Principal"), más intereses a la orden del Prestador. El Prestador es ASOCIACIÓN DE EMPLEADOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, (AEELA). Haré todos los pagos bajo este Pagaré en efectivo, cheque o giro.*

*Entiendo que el Prestador puede traspasar este Pagaré. Se llamará el "Tenedor del Pagaré" al Prestador y a cualquiera a quien se traspase este Pagaré y tenga derecho a recibir pagos bajo el mismo.*

### 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid, I will pay interest at a yearly rate of **FOUR POINT FIVE ZERO PERCENT (4.50%).**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 2.   INTERÉS

*Se cargarán intereses sobre el principal adeudado, hasta que se salde la suma total del Principal. Pagaré intereses a la tasa anual de CUATRO PUNTO CINCO CERO PORCIENTO (4.50%).*

*La tasa de interés impuesta en esta Sección 2 es la tasa que pagaré tanto antes como después de cualquier incumplimiento descrito en la Sección 6(B) de este Pagaré.*

### 3.   PAYMENTS

(A)   Time and Place of Payments

I will pay principal and interest by making a payment every month.
I will make my monthly payments on the **FIRST** day of each month, beginning on **JANUARY 1, 2010**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If on **DECEMBER 1, 2039** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will make monthly payments at Asociación de Empleados del ELA, AEELA Mortgage, P.O. Box 71502, San Juan, PR 00936-8602, or at a different place if required by the Note Holder.

### 3.   PAGOS

(A)   Tiempo y Lugar de los Pagos

*Pagaré el principal y los intereses haciendo un pago cada mes.*
*Haré mis pagos mensuales el día PRIMERO de cada mes, comenzando el 1 DE ENERO DE 2010. Haré estos pagos cada mes hasta que haya pagado todo el principal y los intereses, y cualesquiera otros cargos aquí establecidos que pueda adeudar bajo este Pagaré. Cada pago mensual se aplicará conforme su fecha de vencimiento, y será aplicado a intereses antes que al Principal. Si a el 1 DE DICIEMBRE DE 2039, aún adeudo*

PUERTO RICO FIXED RATE NOTE -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3253 5/05 *(page 1 of 5 pages)*

COPY OF ORIGINAL (NON NEGOTIABLE)

*sumas bajo este Pagaré, pagaré dichas sumas en su totalidad en esa fecha, la cual se llamará "Fecha de Vencimiento". Haré mis pagos mensuales a la dirección que se me indique en la fecha de cierre, Asociación de Empleados del ELA, Préstamos Hipotecarios, P.O. Box 71502, San Juan, PR 00936-8602, o en un lugar distinto que me indique el Tenedor del Pagaré.*

(B)  **Amount of Monthly Payments**

My monthly payments will be in the amount of **EIGHT HUNDRED EIGHTY ONE DOLLARS WITH SIXTY THREE CENTS (U.S. $881.63).**

(B)  *Cantidad de los Pagos Mensuales*

*Mis pagos mensuales serán por la cantidad de OCHOCIENTOS OCHENTA Y UN DÓLARES CON SESENTA Y TRES CENTAVOS (U.S. $881.63).*

4.  **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

4.  *EL DERECHO DEL DEUDOR DE PAGAR ANTICIPADO*

*Tengo el derecho de hacer pagos al Principal en cualquier momento antes de que venzan. Un pago al Principal solamente se conoce como un "Pago Anticipado". Cuando haga un Pago Anticipado, le diré al Tenedor del Pagaré por escrito que lo estoy haciendo. No puedo identificar un pago como Pago Anticipado si no estoy al día en mis pagos mensuales bajo el Pagaré.*

*Podré hacer un Pago Anticipado completo o Pagos Anticipados parciales sin pagar un cargo por Pago Anticipado. El Tenedor del Pagaré usará mis Pagos Anticipados para reducir el balance de Principal que adeude bajo este Pagaré. No obstante, el Tenedor del Pagaré podrá aplicar mi Pago Anticipado al pago de intereses acumulados vencidos antes de aplicar mi Pago Anticipado para reducir la suma Principal del Pagaré. Si hago un Pago Anticipado parcial, no habrá cambios en la fecha de vencimiento o en la cuantía de mi pago mensual, a menos que el Tenedor del Pagaré acuerde por escrito dichos cambios.*

5.  **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces the Principal, the reduction will be treated as a partial Prepayment.

5.  *CARGOS DEL PRÉSTAMO*

*Si una ley que aplique a este préstamo y que fije un máximo a los cargos impuestos es interpretada en forma final al efecto que los intereses u otros cargos cobrados o por ser cobrados a tenor con este préstamo excedesen los límites permitidos, entonces (a) cualquier tal cargo se ajustará por la cantidad necesaria para reducir el cargo al límite permitido; y (b) me será reembolsada cualquier suma ya pagada por mí que exceda los límites permitidos. El Tenedor del Pagaré podrá escoger entre aplicar este reembolso para reducir el Principal que adeude bajo este Pagaré, o hacerme un pago directo. Si un reembolso reduce el Principal, el reembolso se tratará como un Pago Anticipado parcial.*

**BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)  **Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN (15)** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **THREE PERCENT (3%)** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

COPY OF ORIGINAL (NON NEGOTIABLE)

6.   *INCUMPLIMIENTO DEL DEUDOR DE PAGAR SEGÚN REQUERIDO*

    (A)    *Cargos por Demora por Pagos Vencidos*

    *Si el Tenedor del Pagaré no ha recibido la cantidad total de cualquier pago mensual pasados QUINCE (15) días calendario de su fecha de vencimiento, le pagaré un cargo por demora. El cargo será TRES PORCIENTO (3%) del pago vencido de principal e intereses. Pagaré este cargo por demora prontamente, pero solamente una vez por cada pago tardío.*

    (B)    **Default**

    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    (B)    *Incumplimiento*

    *Incurriré en incumplimiento si no pago la cantidad total de cada pago mensual a la fecha de su vencimiento.*

    (C)    **Notice of Default**

    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least thirty (30) days after the date on which the notice is mailed to me or delivered by other means.

    (C)    *Aviso de Incumplimiento*

    *Si incurro en incumplimiento, el Tenedor del Pagaré podrá enviarme aviso escrito diciéndome que si no pago la cantidad vencida para cierta fecha, podrá requerirme saldo inmediato de la suma total del Principal que no ha sido pagado, más todos los intereses que adeude sobre esta suma. Esa fecha tiene que ser por lo menos treinta (30) días después de la fecha en que me sea enviado el aviso por correo, o entregado por cualquier otro medio.*

    (D)    **No Waiver by Note Holder**

    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    (D)    *No Renuncia por el Tenedor del Pagaré*

    *Aun cuando a la fecha en que incurro en incumplimiento el Tenedor del Pagaré no me requiera que pague la totalidad inmediatamente, según expresado anteriormente, el Tenedor del Pagaré tendrá derecho a hacerlo si vuelvo a incurrir en incumplimiento en un fecha posterior.*

    (E)    **Payment of Note Holder's Costs and Expenses**

    If the Note Holder has notified me that I am required to pay immediately in full as described above, or the Note Holder seeks judicial collection or collection in a bankruptcy proceeding, the Note Holder shall be entitled to collect its costs and expenses to enforce this Note (including, but not limited to, attorneys' fees), which are fixed at the agreed and liquidated amount of ten percent (10%) of the original Principal amount.

    (E)    *Pago de Costas y Gastos del Tenedor del Pagaré*

    *Si el Tenedor del Pagaré me ha notificado que tengo la obligación de pagar la totalidad inmediatamente, según se establece anteriormente, o el Tenedor del Pagaré radica cobro judicial o cobro en un procedimiento de quiebra, el Tenedor del Pagaré tendrá derecho a cobrar sus costas y gastos para hacer valer este Pagaré (incluyendo, pero sin limitarse a, honorarios de abogado), los cuales se fijan en la suma pactada y líquida de diez porciento (10%) de la suma Principal original.*

7.   **GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

7.   *NOTIFICACIÓN*

    *A menos que la ley aplicable requiera otro método, cualquier aviso que se me deba dar bajo este Pagaré se hará entregándome o enviándome por correo de primera clase, a la dirección de la Propiedad arriba indicada o a una dirección diferente, si le notifico por escrito una dirección diferente al Tenedor del Pagaré.*

PUERTO RICO FIXED RATE NOTE - - Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3253 5/05 *(page 3 of 5 pages)*

COPY OF ORIGINAL (NON NEGOTIABLE)

*Cualquier notificación que deba dar al Tenedor del Pagaré, lo haré entregándola o enviándola por correo de primera clase a la dirección indicada en la Sección Tres (a) [3(a)], o a una dirección distinta que me haya notificado el Tenedor del Pagaré.*

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**8.    *OBLIGACIONES DE LAS PERSONAS BAJO ESTE PAGARÉ***

*Si más de una persona firma este Pagaré, cada persona queda plenamente y personalmente obligada a cumplir todas las obligaciones contenidas en este Pagaré, incluyendo la promesa de pagar la suma total adeudada. Cualquier persona que sea garantizadora, fiadora, o endosante de este Pagaré también queda obligada de esa manera. Cualquier persona que asuma estas obligaciones, incluyendo las obligaciones de un garantizador, fiador, o endosante de este Pagaré, quedará también obligada a cumplir todas las obligaciones contenidas en este Pagaré. El Tenedor del Pagaré podrá hacer valer sus derechos bajo este Pagaré contra cada persona individualmente, o contra todos nosotros conjuntamente. Esto significa que cualquiera de nosotros podrá ser requerido a pagar todas las sumas adeudadas bajo este Pagaré.*

**9.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons obligated to pay the Note that amounts due have not been paid.

**9.    *RENUNCIAS***

*Yo y toda otra persona obligada bajo este Pagaré renunciamos a la Presentación y al Aviso de Incumplimiento. "Presentación" significa el derecho a requerir que el Tenedor del Pagaré reclame pago de sumas vencidas. "Aviso de Incumplimiento" significa el derecho a requerir que el Tenedor del Pagaré notifique a otras personas obligadas a pagar el Pagaré, que no se han pagado las sumas adeudadas.*

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**10.   *PAGARÉ GARANTIZADO UNIFORME***

*Este Pagaré es un instrumento uniforme con algunas alteraciones en algunas jurisdicciones. Además de las protecciones dadas al Tenedor del Pagaré bajo este Pagaré, una Hipoteca, Escritura de Fideicomiso, o Escritura de Garantía Colateral (la "Hipoteca"), de esta misma fecha, protege al Tenedor del Pagaré de posibles pérdidas*



PUERTO RICO FIXED RATE NOTE - - Single Family - - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3253 5/05 *(page 4 of 5 pages)*

COPY OF ORIGINAL (NON NEGOTIABLE)

*que puedan resultar si no cumplo con las promesas que hago en este Pagaré. Esa Hipoteca describe cómo y bajo qué condiciones puedo ser requerido a pagar inmediatamente el total de todas las sumas que adeude bajo este Pagaré. Algunas de esas condiciones se describen a continuación:*

*Traspaso de la Propiedad o de un Interés Beneficiario del Deudor. Según se utiliza en esta Sección 18, "Interés en la Propiedad" significa todo interés propietario o beneficiario en la Propiedad, incluyendo, pero sin limitarse a, aquellos intereses beneficiarios transferidos como pacto condicional de traspaso, contrato para venta, contrato de venta a plazos o acuerdo de plica, cuya intención sea el traspaso de título por el Deudor a un comprador en fecha futura.*

*Si sin el previo consentimiento del Prestador se vende o traspasa toda o cualquier parte de la Propiedad, o cualquier Interés en la Propiedad (o en caso que el Deudor no sea una persona natural se vende o traspasa un interés propietario en el Deudor), entonces el Prestador podrá requerir el pago completo e inmediato de todas las cantidades aseguradas por esta Hipoteca. Sin embargo, el Prestador no ejercerá esta opción en caso que la Ley Aplicable la prohíba.*

*Si el Prestador ejerce esta opción, le dará aviso al Deudor de la aceleración del vencimiento. Conforme a la Sección 15, el aviso proveerá un período no menor de treinta (30) días a partir de su fecha, dentro del cual el Deudor vendrá obligado a pagar todas las cantidades aseguradas por esta Hipoteca. Si el Deudor dejare de pagar estas cantidades antes del vencimiento de este período, el Prestador podrá invocar cualquier remedio permitido por esta Hipoteca, sin más aviso o requerimiento al Deudor.*

**11. SECURITY INSTRUMENT**

Payment of the indebtedness evidenced by this Note is secured by a Security Instrument dated on even date herewith, constituted by deed number **TWO HUNDRED NINE (209)** of the undersigned Notary.

*11. HIPOTECA*

*El pago de la deuda evidenciada por este Pagaré está garantizado por Hipoteca de esta misma fecha, constituida mediante la escritura número DOSCIENTOS NUEVE (209) del Notario infrascrito.*

IN WITNESS THEREOF, WE HEREBY ACKNOWLEDGE AND SIGN THIS PROMISSORY NOTE.

*EN TESTIMONIO DE LO CUAL RECONOCEMOS Y SUSCRIBIMOS ESTE PAGARÉ.*

_____ (Signature)
JUAN COTTO ALVELO *Firma*
Borrower
*Deudor*

_____ (Signature)
ROSA NEGRÓN LÓPEZ *(Firma)*
Borrower
*Deudor*

(Sign Original Only)
*(Fírmese el Original Solamente)*

AFFIDAVIT NO.: __3,997-__
*Declaración Núm.:* __3,997-__

Reconocido y suscrito ante mí por Juan Cotto Alvelo y Rosa Negrón López, mayores de edad, casados entre sí, propietarios y vecinos de Cidra, Puerto Rico, a quienes por no conocer personalmente les identifico por su licencia de conducir número ▮▮▮▮ a él, y por su tarjeta electoral número ▮▮▮▮ a ella, la cual me muestra voluntariamente, expedidas por el Estado Libre Asociado de Puerto Rico.

En San Juan, Puerto Rico, a 18 de noviembre de 2009.

[SIGNED AND SEALED BY GUILLERMO MOJICA MALDONADO]

NOTARIO PÚBLICO

*(seal: GUILLERMO MOJICA MALDONADO — ABOGADO — NOTARIO — PUERTO RICO)*

PUERTO RICO FIXED RATE NOTE - - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3253 5/05 *(page 5 of 5 pages)*

---CERTIFICO que en la fecha de su otorgamiento expedí primera copia certificada a favor de la ASOCIACIÓN DE EMPLEADOS DE GOBIERNO DE PUERTO RICO. DOY FE

**NOTARIO PÚBLICO**

J. C. A
R. N. L.



---------------- NÚMERO CUARENTA Y UNO (41) ----------------

----------------MODIFICACIÓN DE HIPOTECA----------------

---En la ciudad de San Juan, Puerto Rico, a los diecinueve (19) días del mes de marzo del año dos mil doce (2012). ------

----------------ANTE MÍ----------------

—**ELAINE M. VELEZ TORRES**, Abogada y Notaria Pública en y para la Isla de Puerto Rico, con residencia, y estudio abierto en la ciudad de San Lorenzo, Puerto Rico.----------------

----------------COMPARECEN----------------

—**DE LA PRIMERA PARTE: JUAN COTTO ALVELO y ROSA NEGRON LOPEZ**, ambos mayores de edad, casados entre sí, propietarios y vecinos de Cidra, Puerto Rico; de aquí en adelante denominados "**LOS DEUDORES HIPOTECARIOS.** ------

—**DE LA SEGUNDA PARTE: ASOCIACIÓN DE EMPLEADOS DE GOBIERNO DE PUERTO RICO** antes conocida como **ASOCIACIÓN DE EMPLEADOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO (AEELA)**, una entidad pública debidamente organizada y existente bajo las Leyes de Puerto Rico, seguro social patronal número seis seis cero guión dieciocho guión ocho ocho cinco seis (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), representada en este acto por **MIGDALIA LÓPEZ GÓMEZ**, mayor de edad, soltera, ejecutiva y vecina de San Juan, Puerto Rico, quien comparece en su capacidad de "Directora Ejecutiva Auxiliar" de dicha entidad y a quien se le ha concedido poder para comparecer en este acto mediante acuerdo aprobado por la Junta de Directores de la Asociación de Empleados de Gobierno de Puerto Rico antes conocida como Asociación de Empleados del Estado Libre Asociado de Puerto Rico (AEELA), en una reunión extraordinaria celebrada el día dieciocho (18) de octubre de dos mil once

1

(2011), suscrita por su secretaria Aurea Elsaida Rivera Colón, autenticado por la Notario Público, Genova Y. Toro Morales, mediante affidávit número ciento noventa y nueve (199) de fecha veinticinco (25) de enero de dos mil doce (2012), capacidad que el representante de la Asociación de Empleados de Gobierno de Puerto Rico antes conocida como Asociación de Empleados del Estado Libre Asociado de Puerto Rico (AEELA) acreditará cuándo y dónde fuere necesario; de aquí en adelante denominada **"EL ACREEDOR HIPOTECARIO".**-----------------------------------------------

---**DOY FE** de que por no conocer a la compareciente de la PRIMERA PARTE y por no existir Testigos de Conocimiento que pueda identificarla he procedido a identificarla de acuerdo a lo establecido en el Artículo (17 c) de la Ley Notarial vigente mediante sus respectivas Licencias de Conducir ████████████████████ y ███████ █████████████████████, las cuales contienen firma y foto. A la compareciente de la SEGUNDA PARTE doy fe de conocerla personalmente. -----------------------------------------

---Por sus dichos y mi creencia también DOY FE de la edad, estado, profesión y vecindad de los comparecientes quienes me aseguran tener y a mi juicio tienen la capacidad legal necesaria para este otorgamiento y, en consecuencia, libremente.-----------------------------------------------------------

----------------------------**EXPONEN**----------------------------

---**PRIMERO:** Que el día dieciocho (18) de noviembre de dos mil nueve (2009), LOS DEUDORES HIPOTECARIOS suscribieron un pagaré a favor de EL ACREEDOR HIPOTECARIO por la cantidad principal de **CIENTO SETENTA Y CUATRO MIL DOLARES ($174,000.00)**, más intereses a razón de **cuatro**

*J.C.A*
*R.L.L*

Velez
Elaine M.
Torres

**punto cincuenta** por ciento **(4.50%)** anual, con vencimiento el día primero (1) de diciembre de dos mil treinta y nueve (2039) autenticado mediante affidávit número tres mil novecientos noventa y siete (3997), por el Notario Público Guillermo Mojica Maldonado, el cual fue garantizado por Hipoteca constituida mediante la escritura número doscientos nueve (209), sobre Primera Hipoteca, otorgada en San Juan, Puerto Rico, en la misma fecha y ante el mismo Notario. (En lo sucesivo los referidos pagare e hipoteca se denominarán como el "PAGARE" y la "HIPOTECA", respectivamente; y, la obligación perfeccionada con dichos documentos se denominará como el "PRESTAMO HIPOTECARIO"). Consta inscrita al folio ciento sesenta y cinco (165) del tomo cuatrocientos setenta y ocho (478) de Cidra, finca número dieciséis mil trescientos setenta y dos (16,372), inscripción octava (8va.) y última de la Segunda Sección del Registro de la Propiedad de Caguas, Puerto Rico. ---------------------------------------------------------------

---**SEGUNDO**: La indicada hipoteca grava el inmueble que se describe a continuación:--------------------------------------------

---**URBANA**:- Predio de terreno identificado en el plano de inscripción con el número quince (15) del Bloque D, del proyecto conocido como Hacienda La Cima, ubicado en el Barrio Bayamón, Carretera setecientos ochenta y siete (787), kilómetro cuatro (4), hectómetro seis (6) interior, del término municipal de Cidra, Puerto Rico, con una cabida superficial de novecientos punto cero sesenta y dos metros cuadrados (900.62 m.c.), equivalentes a cero punto dos dos nueve cero cero cuerdas (0.22900 cda.s). En lindes por el NORTE, con área dedicada a uso público (Calle Roble); por el SUR, con terrenos propiedad de Tirso Nogueras; por el ESTE, con el solar número dieciséis (16) del mismo bloque; y por el OESTE, con el solar número catorce (14) del mismo bloque. ---------------------

---Enclava una casa. --------------------------------------------

---Consta inscrita al folio ciento sesenta y cinco (165) del tomo cuatrocientos setenta y ocho (478) de Cidra, finca número dieciséis mil trescientos setenta y dos (16,372),

J. C. A
R. N. L


Velez
Elaine M.
Torres
Abogada-Notaria

3

inscripción sexta (6ta.) de la Segunda Sección del Registro de la Propiedad de Caguas, Puerto Rico. --------------------------------

--**TERCERO**: EL ACREEDOR HIPOTECARIO manifiesta ante mí que tiene el PAGARÉ en su poder, me lo muestra a mí, la Notario, y yo lo examino y me cercioro que es EL PAGARÉ garantizado por la HIPOTECA y así también que el mismo no contiene endoso alguno.-----------------------------------------

--**CUARTO**:   Que al presente, por razón de un cambio drástico en su situación económica, LOS DEUDORES HIPOTECARIOS han visto afectada su capacidad de cumplir con su obligación de pagar los plazos mensuales de principal e intereses del PRESTAMO HIPOTECARIO; razón por la cual LOS DEUDORES HIPOTECARIOS se encuentran en una de las siguientes situaciones: ---------------------------------------

----------**(a)** En adición del balance insoluto del principal del PRESTAMO HIPOTECARIO, LOS DEUDORES HIPOTECARIOS le adeudan a EL ACREEDOR HIPOTECARIO una suma por uno o más de los siguientes conceptos: plazos mensuales vencidos del principal e intereses; recargos por pago(s) atrasado(s); seguro contra riesgo de fuego, huracán y terremoto; seguro contra riesgo de inundaciones, si aplica; y, las partidas para el pago de las contribuciones sobre la propiedad, si aplican; o, -------------------------------------------------------------

----------**(b)** Resulta inminente el hecho de que LOS DEUDORES HIPOTECARIOS no puedan cumplir con el pago de las sumas mencionadas en el inciso (a) anterior una vez estas venzan. --

--**QUINTO**:   Como alternativa a la aceleración del vencimiento del PRESTAMO HIPOTECARIO, así como los demás remedios que tiene a su haber EL ACREEDOR HIPOTECARIO de conformidad con los términos y condiciones del PAGARE y la HIPOTECA, éste le ha concedido a LOS

*J. C. A*
*R. N. L.*



4

DEUDORES HIPOTECARIOS la oportunidad de reestructurar los términos y condiciones del PAGARE y la HIPOTECA. Ello luego de haber tomado en cuenta ciertos criterios de elegibilidad como lo son la condición económica y la capacidad de repago de LOS DEUDORES HIPOTECARIOS, entre otros. ---------

--LOS DEUDORES HIPOTECARIOS manifiestan estar bien enterados de los parámetros utilizados para determinar su elegibilidad para beneficiarse del referido programa de restructuración, en virtud de las explicaciones y orientaciones que le ha ofrecido EL ACREEDOR HIPOTECARIO. ------------

--SEXTO: En virtud de lo anterior, los comparecientes han convenido reestructurar los términos y condiciones del PAGARE y la HIPOTECA de la siguiente manera: ----------------

(a) A la fecha del presente otorgamiento, el balance del principal insoluto del PRESTAMO HIPOTECARIO, más cualquier partida que pudiera existir por concepto de plazos mensuales vencidos de principal e intereses, seguro contra riesgo de fuego, huracán y terremoto, seguro contra riesgo de inundaciones y para el pago de las contribuciones sobre la propiedad totalizan **CIENTO SETENTA Y NUEVE MIL OCHO DOLARES CON VEINTE CENTAVOS ($179,008.20).** De otra parte se aclara que, de existir alguna partida en concepto de cargos por atrasos en el pago de los plazos mensuales de principal e intereses, dicha partida no ha sido considerada para determinar la suma del nuevo principal del PAGARE y la HIPOTECA, es decir, que no ha sido capitalizada; pero, que de ser aplicable al caso de LOS DEUDORES HIPOTECARIOS, éste continuará adeudándole dicha partida de cargos por atrasos a EL ACREEDOR HIPOTECARIO de conformidad con los términos y condiciones del PAGARE y la HIPOTECA. Se

J.C.A
R.N.L



5

aclara además, que por vía de excepción, EL ACREEDOR HIPOTECARIO no podrá acelerar la fecha de vencimiento del PAGARE y la HIPOTECA por el mero hecho de que dichos cargos por atrasos permanezcan impagados luego de otorgada la presente escritura; y, que dicha excepción aplicará únicamente a los cargos por atraso en el pago de plazos de principal e intereses adeudados con anterioridad a la fecha del presente otorgamiento. Sin embargo, dichos cargos por atraso deberán ser satisfechos por LOS DEUDORES HIPOTECARIOS, en o antes de la fecha de vencimiento o el saldo del PAGARE y la HIPOTECA, lo que ocurra primero; (b) La reestructuración del PRESTAMO HIPOTECARIO contempla una reducción en la suma de los plazos mensuales y consecutivos de principal e interés, así como de la tasa de interés anual, por espacio de **TREINTA Y SEIS (36) MESES,** **("PERIODO DE REDUCCION")**, el cual periodo comenzará el **PRIMERO DE ABRIL DE DOS MIL DOCE (2012)**, y terminará el **PRIMERO DE MARZO DE DOS MIL QUINCE (2015);** (c) La tasa de interés anual vigente durante EL PERIODO DE REDUCCION será **TRES POR CIENTO ANUAL (3%);** (d) Durante el PERIODO DE REDUCCION, los plazos mensuales y consecutivos de principal e intereses serán de **SEISCIENTOS CUARENTA DOLARES CON OCHENTA Y TRES CENTAVOS ($640.83);** (e) Comenzando el **PRIMERO DE ABRIL DE DOS MIL QUINCE (2015)**, el interés será reajustado a la tasa original del PRESTAMO HIPOTECARIO **("FECHA DE REAJUSTE")**, o sea, a **CUATRO PUNTO CINCUENTA POR CIENTO (4.50%)**, y de ahí en adelante el principal e interés serán pagaderos en la Asociación de Empleados de Gobierno de Puerto Rico, o en cualquier otro lugar que el tenedor del PAGARE indique por



J. C. A
R. N. L

6

escrito en **CUATROCIENTOS CUARENTA Y CUATRO (444)** pagos mensuales iguales y consecutivos de **SETECIENTOS NOVENTA Y CUATRO DOLARES CON OCHENTA Y SEIS CENTAVOS ($794.86)** en el PRIMER día de cada mes hasta que se pague totalmente la deuda insoluta del PRESTAMO HIPOTECARIO, excepto que la deuda restante, si no antes pagada, quedará vencida y pagadera en la fecha de vencimiento del PAGARE y la HIPOTECA, o sea, el **PRIMERO DE MARZO DE DOS MIL CINCUENTA Y DOS (2052)**. A solicitud de EL ACREEDOR HIPOTECARIO, LOS DEUDORES HIPOTECARIOS se obligan a otorgar, en o antes de la FECHA DE REAJUSTE del PRESTAMO HIPOTECARIO, las enmiendas necesarias al PAGARE y a la HIPOTECA que lo garantiza para reflejar la nueva tasa de interés y el balance del principal a dicha fecha; (f) EL ACREEDOR HIPOTECARIO podrá realizar evaluaciones anuales para determinar si la situación de LOS DEUDORES HIPOTECARIOS permanece bajo los parámetros de elegibilidad para la presente reestructuración; y, de determinar que la situación económica de LOS DEUDORES HIPOTECARIOS ha mejorado al punto en que ya no cumple con los referidos criterios de elegibilidad, EL ACREEDOR HIPOTECARIO podrá acortar el PERIODO DE REDUCCION y adelantar la fecha de reajuste e igualmente modificar de conformidad los demás términos que se mencionan en el inciso (e) anterior, con excepción de la tasa de interés que continuará siendo la tasa original del PRESTAMO HIPOTECARIO. A tales efectos, EL ACREEDOR HIPOTECARIO le notificará de dicha determinación a LOS DEUDORES HIPOTECARIOS por escrito; y, la FECHA DE REAJUSTE no podrá ser más cercana de treinta (30) días de la fecha en que EL

J. L. A
R. M. L.



ACREEDOR HIPOTECARIO le envíe a LOS DEUDORES HIPOTECARIOS dicha notificación por correo, o le sea entregada por cualquier otro medio; (g) EL ACREEDOR HIPOTECARIO consiente a la presente reestructuración del PRESTAMO HIPOTECARIO en atención a la situación económica particular de LOS DEUDORES HIPOTECARIOS. Por tal razón, en el caso de cualquier tercero, que no sea un heredero universal con una participación en el caudal relicto de LOS DEUDORES HIPOTECARIOS, asuman las obligaciones del PAGARE y la HIPOTECA, EL ACREEDOR HIPOTECARIO tendrá la opción de rescindir retroactivamente todos los términos y condiciones de la presente reestructuración, como si esta no se hubiera realizado. Ello podría dar lugar a que surjan deudas adicionales por concepto de principal e intereses, más recargos, lo cual podría a su vez ocasionar que EL ACREEDOR HIPOTECARIO haga uso de los remedios que tiene bajo los términos y condiciones del PAGARE y la HIPOTECA, incluyendo la aceleración del PRESTAMO HIPOTECARIO; (h) LOS DEUDORES HIPOTECARIOS incurrirán en incumplimiento del presente acuerdo de reestructuración si no pagan la cantidad total de cada pago mensual a la fecha de su vencimiento. En tal caso, EL ACREEDOR HIPOTECARIO, sus cesionarios o sucesores en derecho podrán notificarle a LOS DEUDORES HIPOTECARIOS, de conformidad con la forma establecida en el PAGARE y la HIPOTECA, que si no pagan la cantidad vencida para cierta fecha, podrán rescindir el presente acuerdo de reestructuración y requerirles el saldo inmediato de la suma total del principal no pagada, más todos los intereses, recargos y demás cantidades que les adeude LOS DEUDORES HIPOTECARIOS. ----------------------------

T. C A
R. N L



8

—**SÉPTIMO:** Los demás términos y condiciones de PAGARÉ así como los de la HIPOTECA que lo garantiza, permanezcan inalterados y permanecen en vigor.------------------------

---**OCTAVO:** La Notario autorizante ha preparado un anejo ("ALLONGE") bajo affidávit número cuatro mil seiscientos dieciocho (4,618), haciendo referencia al otorgamiento de esa escritura, así como a la modificación aquí estipulada, y se lo ha entregado a EL ACREEDOR HIPOTECARIO, quien es el tenedor del PAGAR, para que éste lo una al PAGARE. ----------

---**NOVENO:** Los comparecientes solicitan del Honorable Registrador de la Propiedad de la sección correspondiente que tome nota de la modificación detallada en el párrafo QUINTO anterior y la haga constar en los libros a su cargo.------

---**DECIMO:** Las palabras utilizadas en el género masculino incluirán las del género femenino; las utilizadas en el singular incluirán el plural, y viceversa; y, la palabra "podrá" meramente dará discreción, sin obligación de tomar acción alguna. ------------------------------------

---------------------------**ACEPTACIÓN**------------------

—LAS PARTES COMPARECIENTES, conforme con los particulares de esta escritura, las aceptan en todas sus partes, por estar conforme a lo convenido.------------------

---YO, la Notario, doy fe de haberle hecho a las partes comparecientes las reservas y advertencias legales pertinentes. Yo, la Notario, advertí a las partes comparecientes de su derecho a tener testigos instrumentales presentes a este otorgamiento, y a cuyo derecho renunciaron. Habiendo las partes comparecientes leído esta escritura en su totalidad, la ratifican totalmente, y confirman que las declaraciones contenidas en la misma



J. C. A
R. N. L

9

reflejan fiel y exactamente sus deseos, en cuya virtud las partes comparecientes firman esta escritura ante mí, la Notario, y estampan sus iniciales en todos y cada uno de sus folios.------------------------------------------------------------

---Y de todo lo contenido en este instrumento público estando el misma exento del pago de sellos de rentas internas así como del pago de comprobantes para Registro de la Propiedad, Doy Fe e haber quedado adherido y cancelado el correspondiente sello de impuesto notarial la Notario, que firma, rubrica, signa y sella. DOY FE. ----------------

J. C. A
R. N L



10

Department of Defense Manpower Data Center

Results as of : Oct-08-2014 06:47:31 AM

SCRA 3.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: <u>COTTO ALVELO</u>

First Name: <u>JUAN</u>

Middle Name:

Active Duty Status As Of: <u>Oct-08-2014</u>

*ExHiBiT "B"*

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

## Certificate ID: FEX2Q0F3K0FE160

Department of Defense Manpower Data Center

Results as of : Oct-08-2014 06:48:24 AM

SCRA 3.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: <u>NEGRON LOPEZ</u>

First Name: <u>ROSA</u>

Middle Name:

Active Duty Status As Of: <u>Oct-08-2014</u>

*EXHIBIT "B"*

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

## Certificate ID: 8E36B0C3K0FEPA0